Martin, J.
The writing sued on contains a distinct promise to pay one hundred dollars at a fixed time, a direction as to the application of the fund, and a provision that it shall be refunded in case of misapplication. The parties supposed that the writing provided for a donation to be made to the institution.- It is an elementary principle that an executory contract to give is without consideration, and that a promise to pay money as a gift may be revoked at any time before payment. “ The gift of the maker’s own note is the delivery of a promise only, and not of the thing promised, and the gift therefore fails.” Kent’s Com. 438 ; Hamor v. Moore, 8 Ohio St., 243; Ohio Wesleyan Female College v. Love’s Ex’r, 16 Id., 20. This doctrine is not disputed. But several claims are variously stated on behalf of the university which may be reduced to two heads. 1st, That there is a valid consideration: In this, that by acceptance the institution agreed to pay over the money, and thus there arose a case of mutual promises; and in this, that the promise and the liabilities incurred on the faith of it serve as considerations each for the other. 2d. That by force of the charter provisions, the promise is binding though it be without a consideration in law. It will be remembered that the closing paragraph of section 6 of the charter requires that donations shall be applied in accordance with the designs expressed by the donors. From this it would seem that the duty of paying as directed in the note is cast upon the institution by the superior force of the statute which operates as a command; and that its *531 duty is Johnson’s right by statute, for which he stipulated, but which can only arise when the gift is executed.
But grant, that by acceptance of the note, the university impliedly agreed to comply with the direction, that is to apply the proceeds to the payment of its indebtedness. Is that a promise to do an act of advantage to Johnson, or of detriment to the institution in the sense requisite to constitute it a legal consideration? We think it is not. If the writing had been in form a promissory note, or a mere promise to make a donation without any qualification, a necessary implication of duty to apply its proceeds to proper corporate objects would arise upon acceptance. In the absence of special circumstances we fail to see how a duty to apply the fund to a particular corporate purpose, can better, serve as a consideration than a duty to apply it to corporate purposes not specified. The duty in either case is implied. The claim made involves the proposition that-a promise in writing to make a gift to an educational institution is valid on acceptance. This is denied in Ohio Wesleyan Female College v. Love's Ex'r, supra. It, however, finds some support in the authorities.
The liabilities incurred by the institution on the faith, as it is said, of the promise, are not alluded to in the pleadings. The only reference to them in the record is found in the deposition of Mr. Bender, which was taken in August, 1878, some 19 months after Johnson’s answer was filed. He testifies that $15,150 “ has been paid by borrowing money from other parties, which money is still owing by the institution.” He does not state when it was borowed. Non constat, but that it was borowed after the answer was filed when, if not before, the promise was revoked. In this state of the testimony we need not comment on the claims made by counsel as to the effect of these loans.
Do the terms of the charter render the promise binding and dispense with the necessity for a consideration in law ? The section quoted in the statement is relied on in argument. It authorizes the trustees to procure funds for specified purposes, and requires them to apply what they *532 may receive by donation or otherwise to those purposes. It also requires that all donations, bequests, &c., be applied in-accordance with the designs expressed by the donors. It names no subject of gift; and of course all things that can pass by gift are included. Gratuitous promises are not named, and not being subjects of gift, are not included. They are left to the control of the law.
Counsel on both sides rely on the case of Ohio Wesleyan Female College v. Love's Ex'r, supra, which should be noticed far enough to be distinguished. In that case the plaintiff was an incorporated educational institution, and counted on an instrument which reads:
“ I, Robert Love, agree to give * * * two hundred and fifty dollars to the Ohio Wesleyan Female College, said sum to be paid out of my estate as provided in my will.” The will contained no provision for its payment. The petition stated that before suit and relying on the agreements of Love and others, the plaintiff made large disbursements and. incurred liabilities in the erection of buildings and purchase of apparatus, &c. A demurrer was sustained in the common pleas; and on error the cause was reserved in the district court. In the supreme court the judgment of the common pleas was reversed and the demurrer overruled. In the opinion, Judge Scott remarks on the conflict in the authorities, and intimates that in the absence of statutory enactments the weight of authority is to the effect that the facts stated in the petition do not show a consideration sufficient in law to support the promise. He then says: ■
“ The acts under which the present plaintiff was incorporated are, that of April 19th, 1852, ‘ to enable the trustees of colleges, academies, universities and other institutions for the purpose of promoting education to become bodies corporate,’ and the act to amend the same passed March 11, 1853 (S. & C. stats. 266, 269). These acts divide the institutions provided for into two classes: one class consisting of those institutions of which the property is owned by individuals in the shape of stock subscribed or taken, and the other embracing such as hold their property in trust, or *533 derive it from donation, gift, devise or gratuitous subscription. The plaintiff belongs to the latter class, which is clearly authorized by necessary implication arising from various provisions of the statute to procure funds for carrying out the purposes of their several organizations by voluntary subscriptions. And that the statute refers not merely to subscriptions which have been in fact paid, appears, as we think, from the second section of the amendatory act, above referred to, which provides, among other things, for the appraisement at their true value in money of such subscriptions as may be exhibited to the appraisers. This subscription then was authorized by law.”
The decision in that case is placed on two propositions: first, that the college was by statute authorized to receive voluntary subscriptions, and second, that the subscription was accepted and liabilities incurred on the faith of it. As we have seen, neither of these grounds is available to the university in the present case.
It follows, from what has been said, that the judgments below are erroneous. We place the reversal on these legal propositions; that the creation of a fund with which to pay the previously incurred indebtedness of the institution was not a consideration in law for the promise; and that the acceptance of the writing containing the direction to apply the fund, does not, in a legal sense, give rise to a case of mutual promises.

Judgment reversed.